ALEX UFFLEMAN, JR., Plaintiff and Respondent, v. L. H.
LABBIT, Defendant and Appellant.

No. 11460.
Submitted November 19, 1968. Decided December 11, 1968.
448 P.2d 690.

Lamb & Snyder, Franklin A. Lamb, (argued), Billings, for defendant and appellant.

Bert W. Kronmiller, (argued), Hardin, for plaintiff and respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal from an order of the district court of Big Horn County refusing to vacate a default judgment. The judgment awarded plaintiff $15,000 damages for breach of contract to lease certain lands on the Crow Indian reservation to him.

Plaintiff Alex Uffleman, Jr. and Defendant L. H. Labbitt entered into a written contract on May 10, 1965, whereby defendant agreed to sell to plaintiff several leases of Indian lands. Contrary to the written terms of the contract, the parties agreed that plaintiff was not to take possession of these lands until March 1, 1967, because defendant had subleased the lands to one Henry Seder until that time. Plaintiff agreed to pay a total consideration of $11,500 under the terms of the agreement through a series of installment payments represented by 10 promissory notes, the first of which was payable September 1, 1967. The notes and leases were escrowed in the Big Horn County State Bank in Hardin.

The written agreement contained no warranty of title to the leasees. Defendant agreed to deliver only such right, title and interest as he had in the leases. However, the understanding was that defendant would guarantee and stand behind such leases and he so testified.

Prior to March 1, 1967, defendant gave notice to Seder that his sublease would not be renewed and to vacate the lands by March 1. Prior to March 1, plaintiff was advised by the superintendent of the Crow Indian reservation that defendant's leases were invalid and that he would not allow possession to be taken under them. Plaintiff also learned that Seder had obtained his own leases direct from the Indian owners, claimed the right of possession of the lands under such direct leases, and would not surrender possession.

On May 18, 1967, plaintiff made demand on defendant that he return the promissory notes escrowed in the bank and for $15,000 damages incurred in preparing his farming operations in reliance on securing the leased lands from defendant. Be-

tween the time of execution of the agreement with defendant and the time plaintiff was entitled to take possession of the lands, plaintiff had purchased (1) a 300 acre farm that could not be farmed profitably without the additional lands under defendant's leases, (2) 35 head of cattle, and (3) additional machinery. In his demand, plaintiff also advised that in the event of failure of defendant to comply, suit would be filed accordingly.

Defendant made no response to plaintiff, but orally advised the bank that the contract with plaintiff was dissolved and that plaintiff was to have the notes any time he called for them. Neither the bank nor defendant notified plaintiff of this. On July 20, 1967, plaintiff filed suit against defendant, making the same claims contained in his previous demand.

Defendant was served with summons and complaint on July 24 and on the following day wrote plaintiff that the lease agreement was cancelled, that the notes were available to him at the bank, and that "I have no claim on you and I am sure you have no claim on me." The following day without waiting for plaintiff to pick up the notes, defendant picked them up at the bank, marked each note "This note and contract cancelled" and affixed his signature thereon, and mailed them by registered mail to plaintiff. The transmittal letter advised plaintiff to go to the bank and sign a release on the escrow, concluding with the words "See you in court."

Defendant did not answer the summons and complaint, so on August 15 plaintiff entered default against defendant. On August 24 a hearing was held on entry of default judgment. Thereafter plaintiff was granted a default judgment against defendant for $15,000 damages based on breach of contract.

Notice of entry of judgment was served on defendant on August 29. Defendant immediately wrote plaintiff threatening a damage action unless plaintiff cleared the records of the judgment. When this letter did not produce the desired results, defendant secured counsel and on September 14 filed

his motion to vacate the default judgment on the grounds of mistake, inadvertence, surprise or excusable neglect. A full scale hearing was subsequently held, briefs were filed, and on December 19 the district court denied defendants' motion with a well reasoned 8 page supporting memorandum by Judge Luedke.

The issues presented for review upon this appeal can be summarized as follows: (1) Should the motion to vacate the default judgment have been granted? (2) Is the default judgment erroneous on its face? (3) Was an erroneous standard used by the court in determining damages? (4) Failure of proof to support the judgment.

 The principal issue upon this appeal is whether the default judgment should have been vacated. Defendant's motion therefor was based on Rule 60(b) (1), M.R.Civ.P. which provides:

"On motion and upon such terms as are just, the court may relieve a party * * * from a final judgment * * * for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect * * *."

By the adoption of the Montana Rules of Civil Procedure, the prior decisions of this Court relating to vacating default judgments have not been abandoned. Sewell v. Beatrice Foods Co., 145 Mont. 337, 400 P.2d 892. Prior decisions have established that only a slight abuse of discretion in refusing to set aside a default judgment is sufficient to justify a reversal, and when a motion to vacate a default judgment is supported by a showing which leaves the court in doubt or upon which reasonable minds might reach different conclusions, the doubt should be resolved in favor of the motion. Sewell v. Beatrice Foods Co., supra; United States Rubber Co. v. Community Gas & Oil Co., 139 Mont. 36, 359 P.2d 375; Cure v. Southwick, 137 Mont. 1, 349 P.2d 575.

Let us examine the supporting affidavits and evidence on defendant's motion in the instant case. At the outset, we

observe that at the hearing on defendant's motion the court went to great lengths in examining all the evidence, not only in support of the motion but on the merits of the case and the defenses tendered in the proposed answer to the complaint.

Defendant's principal contention is that he was surprised at the entry of the default judgment against him. He claimed in his affidavit and in his own testimony that after the summons and complaint were served upon him, plaintiff's father came to see him and stated that his son was anxious to drop the suit, that he would talk to his son and his attorney to see what they could do to cancel the suit. Defendant then left for Seattle on a business trip and upon his return, learned that the default judgment had been taken against him.

The district judge aptly observed in his memorandum: "If Defendant had in fact been misled at the instance of Plaintiff into believing that the suit was to be cancelled and for that reason failed to appear and defend, sufficient cause might exist for setting aside the judgment; but the evidence adduced at the hearing does not support this claim."

At the hearing defendant did not call plaintiff's father as a witness but relied entirely on his own unsupported affidavit and testimony. Plaintiff offered testimony showing that his father had no authority to act for him and produced a counter-affidavit by his father explicitly stating "I specifically told Dr. Labbitt that anything concerning the dropping of the lawsuit would have to be done by my son and that he would have to approve of any thing said between myself and Dr. Labbitt." The father did admit that he told defendant that he would see his son about a compromise because of the threat by defendant to sue his son for damages.

But the most compelling reason why defendant's claim of surprise is without merit is the testimony and letters of defendant himself. These clearly indicate the reason defendant did not appear and answer plaintiff's complaint was not any

statements by plaintiff's father, but was entirely due to defendant's mistaken belief that he could nullify the complaint by returning the cancelled notes, unilaterally cancel the agreement, and declare the entire transaction void because he had received no actual payment under the contract. This is borne out by his letter to plaintiff after entry of the default judgment stating "You have no contract with me. A contract is no good without a payment of any kind. A post dated not [sic] is no payment." Defendant made no mention of any conversations with plaintiff's father nor of any understanding on his part that the suit had been cancelled. He simply concluded that upon return of the cancelled notes to plaintiff, the agreement was cancelled and plaintiff had no further standing in court under the complaint making any defense unnecessary.

Defendant made a mistake of law, not a mistake of fact. A mistake of law is not such a "mistake" under the provisions of Rule 60(b) (1), M.R.Civ.P. as will support vacating a default judgment. Reickhoff v. Woodhull, 106 Mont. 22, 75 P.2d 56. Defendant was no novice in respect to legal actions and legal process, having been involved in some 148 lawsuits in Big Horn County alone. He knew what a summons was and that he had to answer it or suffer the consequences. His failure to do so can neither be justified by innocence nor by his mistaken belief that he had cancelled the contract thereby depriving plaintiff of any standing in court.

Nor was his failure to answer the summons and complaint due to inadvertence for precisely the same reason. It was an intentional omission to act. Even assuming, arguendo, that his attention to his business in Seattle resulted in his forgetting to answer the summons and complaint, such will not enable him to prevail. Forgetfulness is not sufficient basis for vacating a default judgment. Schalk v. Bresnahan, 138 Mont. 129, 354 P.2d 735.

■ Nor was any excusable neglect shown by defendant for the same reasons heretofore set forth.

Defendant next contends that the default judgment is erroneous on its face and should be set aside. This claim is based on alleged erroneous language in the judgment and upon an erroneous exhibit attached to plaintiff's complaint.

■ The language relied upon in the judgment is "the plaintiff spent his time and effort in improving said lands and premises" when in fact plaintiff never occupied the land, and that the leases were "wholly invalid and of no effect" when, it is contended, this fact was not actually adjudicated. The answer to this contention is simply that there are sufficient findings and evidence to support the judgment without the objectionable language so it can be treated as surplusage in any event.

■ Defendant further contends that the exhibit attached to the complaint, on which was written "I stand back of these leases" concerned another sales agreement with plaintiff's father and not with plaintiff. It is clear that this exhibit is erroneous but it was not offered in evidence, used to secure the judgment, nor was the judgment based thereon. Additionally, defendant himself testified that he gave plaintiff the same oral guarantee.

■ Overriding all other considerations, defendant's grounds on which his second issue is based are outside the scope of his motion to vacate the default judgment under Rule 60(b) (1), M.R.Civ.P. Accordingly, this issue cannot be raised thereunder.

Defendant's third and fourth issues assigned for review will be commented upon briefly. In these issues defendant contends that the court adopted an erroneous standard for measuring damages and that there was a failure of proof to support the default judgment.

■■ No transcript of the testimony at the hearing on entry of the default judgment is before us. We have no

way of knowing what the evidence on damages was, what standard was used by the court in its award of damages, or what proof was introduced in support of the judgment. The judgment is presumptively correct (Section 93-1301-7(17), R.C.M.1947; Missoula Light & Water Co. v. Hughes, 106 Mont. 355, 77 P.2d 1041) and in the absence of a record this presumption controls. Defendant cannot attack the evidence on which the judgment is based by introducing evidence in support of his proposed defense at the hearing on his motion to vacate the default judgment. This is no proof that the evidence at the hearing on entry of the judgment was insufficient or that an erroneous standard of damages was used therein.

For the foregoing reasons, we hold that Judge Luedke did not abuse his discretion in refusing to vacate the default judgment. The order of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR, CASTLES and JOHN CONWAY HARRISON, concur.